UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUCILLE SIMPSON, on behalf of plaintiff and a class, ) ) ) Plaintiff, ) ) v. ) ) SAFEGUARD PROPERTIES, LLC, ) ) Defendant. ) | Judge Joan B. Gottschall No. 13 CV 2453 |

## MEMORANDUM OPINION & ORDER

On April 2, 2013, Plaintiff Lucille Simpson brought a putative class-action suit against Safeguard Properties, LLC ("Safeguard"). Simpson alleges that Safeguard is a debt collector within the meaning of the Fair Debt Collection Practices Act ("FDCPA") and that Safeguard violated the FDCPA by (1) failing to provide Simpson with notice required under the Act, (2) failing to disclose that Safeguard was attempting to collect a debt, and (3) failing to use its own name in its debt-collection business. The court granted Simpson's renewed motion for class certification on September 17, 2014. *See Simpson v. Safeguard Properties, LLC*, No. 13-cv-2453, 2014 U.S. Dist. LEXIS 130659 (N.D. Ill. Sept. 17, 2014). Safeguard now moves for reconsideration of that ruling. For the reasons stated below, the motion is denied.

I. **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 54(b), a court may reconsider its interlocutory orders "at any time before the entry of judgment adjudicating all the claims." Fed. R. Civ. P. 54(b); *see also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) ("Rule 54(b) provides that non-final orders may be revised at any time before the entry of a judgment adjudicating all the

claims and all the parties' rights and liabilities.") (quotation marks omitted).  But a motion to reconsider is not a vehicle to rehash an argument the court has already rejected or to present legal arguments that were not presented earlier.  *See Shilke v. Wachovia Mortg., FSB*, 758 F. Supp. 2d 549, 554 (N.D. Ill. 2010).  A motion to reconsider allows a party to bring only manifest errors of fact or law to the court's attention or to present newly discovered evidence.  *See Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012).  "To be within a mile of being granted, a motion for reconsideration has to give the tribunal to which it is addressed a reason for changing its mind." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004).

## II. DISCUSSION

Safeguard contends that the court erred in finding that Simpson satisfied the numerosity, typicality, commonality, and predominance requirements under Federal Rule of Civil Procedure 23.  The court accordingly revisits its ruling on each of these requirements.

### A. Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Where the class members are at least 40, joinder is generally considered impracticable. *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1969). A plaintiff need not allege the exact number or identity of class members. *See Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978) ("The difficulty in determining the exact number of class members does not preclude class certification."). Where the precise size of the class cannot be known until after discovery is completed, the court may still find that the numerosity requirement is met.  *Smith v. Short Term Loans*, No. 99 C 1288, 2001 WL 127303, at *13 (N.D. Ill. Feb. 14, 2001).

Here, Safeguard does not contest its executive's statements that Safeguard performed 10,908 "contact-attempt inspections" in Illinois on behalf of Midland Mortgage Company ("Midland"). Instead, Safeguard stresses that it determined through those inspections that some of the subject properties were abandoned, in which case no consumer would have been present to see the door hanger(s) Safeguard left. Safeguard thus argues that the court erred in finding the class sufficiently numerous because Simpson "failed to demonstrate that a sufficient number of class individuals actually received the door hangers." (Mot. at 14.)

The court, however, addressed this argument in its opinion:

> Even if, as is likely, the number of individuals who received door hangers is less than 10,908, Safeguard has not offered any evidence that the number of individuals (as opposed to abandoned properties) who received door hangers is not high enough to satisfy numerosity. The 10,908 hangers establish that at least *some* of those involved debt-collection activities. Safeguard has offered no reason for the court to believe that all but 40 (or fewer) of those door hangers were left on abandoned properties. The court can safely assume that the number of individuals who received door hangers satisfies the numerosity requirement, even if the actual number falls short of 10,908. The failure to provide a precise number does not prevent Simpson from satisfying the numerosity requirement.

*Simpson*, 2014 U.S. Dist. LEXIS 130659, at *7.

Safeguard offers no authority for the proposition that Simpson must identify the precise number of individuals in the class to meet the numerosity requirement. As the court previously posited, such precision is unnecessary. *See N.B. v. Hamos*, 26 F. Supp. 3d 756, 770 (N.D. Ill. 2014) (citing *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) ("plaintiffs are not required to specify the exact number of persons in the class")); *and Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978) ("The difficulty in determining the exact number of class

members does not preclude class certification.")). Safeguard's attempt to relitigate the same issue with no new evidence or controlling authority is unavailing.[1]

### B. Typicality

In finding Simpson's claim typical of the class, the court reasoned that "the conduct [Simpson] describes in her class definition—Safeguard's using door hangers to contact individuals—is identical for each putative class member." *Simpson*, 2014 U.S. Dist. LEXIS 130659, at *12. Critical to the court's analysis was the "emphasis" in FDCPA cases "on the uniform acts of the defendant toward each individual, not the uniform position of the individual plaintiffs." *Id.* (quoting *Cox v. Sherman Capital, LLC*, 295 F.R.D. 207, 213 (S.D. Ind. 2013)).

Safeguard argues that the court's "ruling ignores the uncontroverted evidence relating to both plaintiff's interactions with Safeguard, as well as the nature of Safeguard's practices in general." (Mot. at 12.) Specifically, Safeguard claims that the door hangers it left on Simpson's door do "not constitute a 'communication' under 1692e or Section 1692g of the FDCPA," so Safeguard cannot be held liable to Simpson under the FDCPA. (*Id.*) And without a claim, the argument goes, Simpson's suit is not typical of the class.

Safeguard's argument fails because it overlooks the law that governs whether a named plaintiff's claims are typical of the class. All Simpson must show to meet Rule 23(a)(3) is that her claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Safeguard does not dispute that Simpson predicates her claim on

---

[1] Safeguard focuses on the court's citation to *Krawczyk v. Centurion Capital Corp.*, No. 06-C-6273, 2009 U.S. Dist. LEXIS 12204, 2009 WL 395458 at *12 (N.D. Ill. Feb. 18, 2009) for the notion that "actual receipt" of a communication is not required to state an FDCPA claim. Regardless of whether *Krawczyk* concerned a plaintiff's standing, as the court construed it, or a debt collector's obligations under the FDCPA, as Safeguard suggests, the guidance from *Krawczyk* was only one of several grounds upon which the court relied in finding that Simpson's allegations satisfied Rule 23(a)(1).

the same act that gives rise to the class claims: Safeguard's use of door hangers to contact individuals. This uniform act by Safeguard is sufficient to show typicality in an FDCPA case. *See Cox*, 295 F.R.D. at 213; *Janetos v. Fulton Friedman & Gullace, LLP*, No. 12 C 1473, 2014 WL 3600518 at *3 (N.D. Ill. July 21, 2014).

Safeguard also asserts that "plaintiff cannot meet the typicality requirement because [of] the myriad of defenses unique to the plaintiff . . . ." (Mot. at 13.) But Safeguard, again, presents an argument that the court explicitly rejected in its opinion. The court posited that the focus in FDCPA cases is "not the uniform position of the individual plaintiffs." *Simpson*, 2014 U.S. Dist. LEXIS 130659, at *11 (quoting *Cox*, 295 F.R.D. at 213)).[2] Safeguard's attempt to downplay the uniformity of its conduct and magnify the class members' individual circumstances is no more convincing now than it was when the court certified the class.

### C. Commonality and Predominance

The court discusses the commonality and predominance requirements collectively because Safeguard moves for reconsideration of each requirement on the same grounds. To satisfy the commonality requirement of Rule 23(a)(2), a plaintiff must show that there are questions of fact or law that are common to all class members. This requirement is usually met where a class claim arises out of some form of standardized conduct by the defendant. *See, e.g., Keele*, 149 F.3d at 594. Predominance and commonality are related, but "the predominance criterion is far more demanding." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624 (1997)). Under Rule 23(b)(3), the plaintiff must show that "questions of law or

---

[2] Safeguard argues that the court's "reliance on *Cox* is misplaced." (Mot. at 13.) According to Safeguard, *Cox* does not "stand[ ] for the proposition that a plaintiff can meet the typicality requirement where she has no valid claim as a matter of law, simply because she can allege similar conduct in her complaint." (*Id.*) But Safeguard forgets that the court found that Simpson stated an FDCPA claim, when the court denied Safeguard's motion to dismiss in June 2013. (*See* Order, ECF No. 32.) Safeguard's attempt to differentiate Simpson from the rest of the class by rearguing its motion to dismiss is insufficient.

fact common to class members predominate over any questions affecting only individual members."

Here, the court determined in its order granting Simpson's renewed motion for class certification that both Rule 23(a)(2) and Rule 23(b)(3) were satisfied because the class claims all relate to whether Safeguard's uniform contact toward the class members violated the FDCPA. Safeguard challenges this ruling by first arguing that the court "incorrectly presume[d] that each and every Contact Attempt Inspection is, *per se*, an attempt to collect a debt." (Mot. at 9.) The door hangers, Safeguard stresses, "are innocuous" and give "no indication that they are in furtherance of a debt." (*Id.*) But as Safeguard itself notes in one of its briefs, the court cannot "turn the class certification proceedings into a dress rehearsal for the trial on the merits." (Safeguard's Supp. Br. at 4) (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012)). Safeguard's rationale as to how the door hangers are "innocuous" runs to the gravamen of Simpson's claim—that the door hangers constituted an initial communication with a consumer that triggered obligations under the FDCPA with which Safeguard failed to comply. That Safeguard maintains its door hangers were not communications in connection with a debt is not an issue the court is resolving at this stage. *See Id.*

In fact, in terms of the sufficiency of Simpson's allegations—as opposed to their merits—the court has already found that "Simpson has pleaded facts that, taken as true, plausibly indicate that Safeguard is a 'debt collector' and that the notes were communications in connection with the collection of a debt." (*See* Order at 7, ECF No. 32.) The court explained:

> Given that the notes Safeguard hung instructed Simpson to have her account number ready and call the phone number of Midland Mortgage's loan counselors, it is reasonable to infer that the purpose of the note was to encourage Simpson to contact Midland Mortgage to discuss options to settle her purported debt. This inference is made stronger by the lack of any indication that Safeguard had any

6

relationship with or reason for contacting Simpson beyond its link to Midland Mortgage, Simpson's mortgage servicer.

(*Id.* at 5-6.) The court concluded, "Although at this time, the court takes no position regarding the merits of Simpson's allegations, it finds that she has sufficiently stated a claim upon which relief can be granted to survive a Rule 12(b)(6) motion." (*Id.* at 6.)

Likewise, the court takes no position on the merits of Simpson's allegations at this time either. At the class certification stage, "the question is 'whether plaintiff is asserting a claim which, assuming its merit, will satisfy the requirements of Rule 23." *Szabo v. Bridgeport Machs.*, Inc., 249 F.3d 672, 676 (7th Cir. 2001) (citation and quotation marks omitted). In this regard, all the court has determined is that "[t]he claims of all class members revolve around whether Safeguard's practices violated the FDCPA," a common question "that will resolve issues 'central to the validity of each one of the claims in one stroke.'" *Simpson,* 2014 U.S. Dist. LEXIS 130659, at *9-10 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

The second line of argument Safeguard advances is that individual questions regarding each plaintiff's standing overwhelm the common questions concerning Safeguard's conduct. Safeguard asserts that these individual questions include "whether the communication in question actually concerned a debt; whether the class member debtor actually received the notice (as the door hangers are left outside, susceptible to people, *animals*,[3] and the elements); whether the individual declared bankruptcy; whether the individual received any follow up [sic] communications from its [sic] mortgage company containing the information listed in Section 1692g; whether the individual had previously received 'communications' concerning the debt; and whether the individual made any payments within five days." (Safeguard's Reply at 9) (emphasis added.) But if Safeguard were correct, and the presence of such questions precluded

---

[3] Despite Safeguard's assertion, the court looked for, but could not find, any evidence showing that animals, birds, or other fauna ever removed and absconded with Safeguard's door hangers.

7

class certification, then one would expect to find no FDCPA cases being certified for alleged violations of Section 1692g because all of the questions emanate directly from the text of the statute. *See* 15 U.S.C. § 1692g ("Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice . . . .").

Courts within this district, however, have considered the types of individual questions Safeguard raises and nevertheless certified FDCPA classes. In *Pawelczak v. Fin. Recovery Servs.*, 286 F.R.D. 381 (N.D. Ill. Oct. 26, 2012), for instance, the court certified FDCPA class claims against Financial Recovery Services, Inc. ("FRS"), which allegedly delivered pre-recorded telephone messages to the plaintiff without providing the necessary disclosures under 15 U.S.C. §§ 1692d(6) and 1692e(11). FRS opposed the plaintiff's motion for class certification, in part, by arguing that "factual determinations for each class member" abounded. *Id.* at 386. The "individual fact inquiries for each class member," FRS claimed, "include[d] who answered the call, whether the answering party heard the entire message, whether the answering party heard at least two message[s] during the class period, whether the answering party was a consumer, *whether the live message was the initial communication, and whether that communication was the initial or subsequent communication and the circumstances under which it was received.*" *Id.* (quotation and grammatical marks omitted) (emphasis added).

Notwithstanding these class member-specific questions, the court found that "[t]he requisite common nucleus of operative fact exist[ed]" because the plaintiff's FDCPA claims arose from a standardized debt collection practice. *Id.* Typically, the court explained, commonality exists in an FDCPA claim "when the controversy arises from a standard form debt

8

collection letter." *Id.* Although FRS used a different method, a pre-recorded message, to contact the plaintiff, the court found the message analogous to the template debt collection letter because FRS played "the exact same script" to all members of the class. *Id.*

Applied to Rule 23(a)(2) and Rule 23(b)(3), this analogy led the court to conclude that questions surrounding FRS's use of the pre-recorded message satisfied not only the commonality requirement but the predominance requirement as well. The court noted that, given the uniformity of FRS's conduct, none of the individual fact inquiries FRS identified were "material to . . . determining [FRS's] liability under the FDCPA." *Id.* at 387. *See also Janetos v. Fulton Friedman & Gullace, LLP*, No. 12-cv-1473, 2014 U.S. Dist. LEXIS 98431, at *7-8 (N.D. Ill. July 21, 2014) (certifying class claims for alleged violations of 15 U.S.C. §§ 1692g, 1692e, and 1692e(10) stemming from the defendant's delivery of a standard debt collection letter to 19,000 addresses in Illinois because "[a] ruling that the letters violate or do not violate the FDCPA would be applicable to all of the proposed class members," and because "[a]ny separate proceedings that might be needed to ascertain individual issues would be minor compared to the overall advantages of having this case proceed as a class"); *Hale v. AFNI, Inc*., 264 F.R.D. 402, 405 (N.D. Ill. 2009) ("AFNI argues that, unlike the class he proposes to represent, Hale received an initial communication from AFNI before receiving the form letter centrally at issue in this case. However, even if this is true, the existence of some factual differences among class members' claims will not defeat commonality. Moreover, the commonality requirement is normally satisfied when the defendant's 'standardized conduct' toward class members involves sending form letters."). This authority contradicts Safeguard's assertion that the class member-specific questions arising under Section 1692g bar certification of a class claim for an alleged violation of this provision.

Safeguard argues that two other cases from this district—*Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817 (N.D. Ill. 2013) and *Alqaq v. CitiMortgage, Inc.*, 13-cv-5130, 2014 WL 1689685 (N.D. Ill. Apr. 29, 2014)—support its position that individual issues predominate in this matter, but neither case is apposite. *Hill* involved allegations that the defendants, *inter alia*, broke into the plaintiffs' home in connection with a foreclosure action, replaced exterior door locks, drilled a hole into the hot water heater, drained the water lines, and shut off the gas valve, all without permission from the plaintiffs or the court. *Id.* at 820-21. At the pleading stage, the court granted the defendants' motion to strike the plaintiff's FDCPA class allegations not because individual questions predominated, but because the court granted the defendants' motion to dismiss the plaintiffs' FDCPA claim pursuant to Rule 12(b)(6) on statute of limitation grounds.

The only class allegations that the *Hill* court considered bore on the plaintiffs' state law claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* To prove this claim, the plaintiffs had to show that the defendants' business practice was unfair, which in turn depended on "(1) whether the practice offend[ed] public policy; (2) whether it [was] immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it cause[d] substantial injury to consumers." *Id.* at 826 (quotation marks and citation omitted). The court ultimately determined that the plaintiffs could not satisfy Rule 23(b)(3) for their ICFA claim because the common questions the plaintiffs proposed—such as whether the defendants' "practices of boarding up, changing locks, and entering into homes without a hearing or a court order violate[d] statutory and common law"—"present[ed] a slew of legal and factual questions that [were] unique to each class member." *Id.* at 832. For example, "[d]id [the defendants] change [a class member's] locks, board up his doors or windows, or do

something else like vandalizing his hot water tank, or did they merely enter his home without doing anything in particular inside it, or merely trespass on his land without entering any structure?" *Id.* at 833. The court observed that such questions bespoke a variance in the defendants' actions with respect to each class member. *Id.* Because the questions were predominantly "individual rather than class questions," the court held that they preclude[d] the proposed class from meeting Rule 23(b)(3)'s predominance requirement." *Id.*

The common questions in this case, by contrast, flow from the uniform practice by Safeguard to conduct Contact Attempt Inspections by placing hangers on class members' doors. Safeguard's conduct did not vary from member to member, or at least not in any material way Safeguard can identify. And the putative class claims here and in *Hill* also differ significantly. Whereas the ICFA claim in *Hill* required the court to assess whether the defendants' actions with respect to each class member were "unfair," the individual questions Safeguard identifies have less to do with its conduct and more to do with the "factual variations among class members' grievances that do not defeat a class action." *See Keele*, 149 F.3d at 594; *see also Janetos v.*, 2014 U.S. Dist. LEXIS 98431, at *7-8; *Hale*, 264 F.R.D. at 405.

*Alqaq* is similarly distinguishable from this case. There, the plaintiff sued the defendant that is a party to this matter, Safeguard Properties, LLC, and another company after they allegedly broke into the plaintiff's home "to secure and winterize [the plaintiff's] foreclosed property." *Id.* at *3. The issue was not whether the putative FDCPA class claim met the requirements of Rule 23, but whether the plaintiff adequately pled his FDCPA claim under Rule 8.

In granting the defendants' motion to dismiss pursuant to Rule 12(b)(6), the court found that the defendants did not act as "[d]ebt collectors within the meaning of the FDCPA" because

their "principal purpose" was "not debt collection or the enforcement of security interests, but rather securing property." *Id.* at *3. The court continued, "The alleged conduct of Safeguard and A & D was incidental to debt collection and was not dispossession or disablement of property to enforce a security interest within the purview of § 1692f(6)(A)." *Id.* at *4.

Here, on the other hand, the court has already found the allegations in the complaint sufficient to state an FDCPA claim. Although it is improper to use a motion to reconsider to rehash arguments the court has rejected, that is exactly what Safeguard has done. Nothing in Safeguard's motion suggests to the court that it committed manifest error either in its order denying Safeguard's motion to dismiss or in its order granting Simpson's renewed motion for class certification. *See Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent.") (quotation marks omitted).

### III. CONCLUSION

For these reasons, Safeguard's motion for reconsideration is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: May 7, 2015