UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LUCILLE SIMPSON, on behalf of herself and the class members defined herein, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 13-CV-02453 |
| v. | ) ) | Judge Joan B. Gottschall |
| SAFEGUARD PROPERTIES, LLC, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are cross motions for summary judgment in this case brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. The parties chiefly disagree about whether defendant Safeguard Properties, LLC ("Safeguard"), meets the FDCPA's definition of a debt collector by placing door hangers as part of inspections of homes conducted at the behest of a mortgage service. Finding genuine factual disputes material to that question exist, the court denies the cross motions on that issue.

## I. BACKGROUND

The court begins by sketching the pertinent procedural history. It then sets forth the undisputed facts at summary judgment.

**A. Procedural History**

Safeguard moved to dismiss plaintiff Lucille Simpson's ("Simpson") complaint for failure to state a claim for which relief could be granted. *See* Fed. R. Civ. P. 12(b)(6). The court denied the motion on June 12, 2013. *Simpson v. Safeguard Props., LLC* ("*Simpson I*"), No. 13 C 2453, 2013 WL 2642143 (N.D. Ill. June 12, 2013). The court decided that Simpson's complaint, viewed favorably to her, stated a claim that Safeguard met the FDCPA's definition of

a debt collector. *Id.* at *2. Also, the complaint, ruled the court, plausibly alleged that Safeguard sent communications in connection with the collection of a debt. *Id.* at *3–4; *see also id.* at *4 ("tak[ing] no position regarding the merits of Simpson's allegations"); 15 U.S.C. § 1692c.

After an initial round of discovery, Simpson moved under Federal Rule of Civil Procedure 23 for class certification. The court granted her motion on September 17, 2014. *Simpson v. Safeguard Props., LLC* ("*Simpson II*"), No. 13 C 2453, 2014 WL 4652336 (N.D. Ill. Sept. 17, 2014). Safeguard asked the court to reconsideration its decision. The court denied that request on May 7, 2015. *Simpson v. Safeguard Props., LLC* ("*Simpson III*"), No. 13 CV 2453, 2015 WL 2193135 (N.D. Ill. May 7, 2015). As certified, the class consists of:

> (a) all natural persons with Illinois addresses (b) that Safeguard contacted at the secured property (c) with a standard door hanger (d) on behalf of Midland (e) on or after April 12, 2012 (one year prior to the filing of this action on April 12, 2013) and (f) on or before May 2, 2013 (20 days after filing this action), (g) where the address of the secured property and the address of the mortgagor were the same.

*Simpson II*, 2014 WL 4652336, at *1 (citation omitted).

Class discovery followed. *See* Minute Entry, June 3, 2015, ECF No. 104. Notice of the pendency of this action was sent to class members on or around October 21, 2016. Minute Entry, Dec. 12, 2016, ECF No. 142. The parties subsequently filed the pending cross motions for summary judgment.

**B. Facts**

Except where otherwise stated, the court draws the following undisputed facts from the parties' Local Rule 56.1 statements of undisputed material facts. The court discusses the factual disputes in its analysis.

In 2011, Midland Mortgage Co. ("Midland") serviced the mortgage on Simpson's home in Bolingbrook, Illinois. Def.'s Resp. to Pl.'s SOF ¶ 12, ECF No. 162; Pl.'s Resp. to Def.'s SOF

2

¶ 5, ECF No. 164; *see also* Def.'s Resp. to Pl.'s SOF ¶ 15 (describing notice of default dated Jan. 10, 2012). Beginning May 2011, Midland considered Simpson's mortgage to be in default. Def.'s Resp. to Pl.'s SOF ¶ 13. Midland subsequently retained Safeguard to provide contact and inspection services for Simpson's home. *Id.* ¶¶ 14, 19. Between October 8, 2012, and February 1, 2013, Safeguard independent contracts left five hangers on Simpson's door. *Id.* ¶¶ 17, 20; Pl.'s Resp. to Def.'s SOF ¶ 8. Except for the door hangers, Simpson has not communicated with Safeguard. Pl.'s Resp. to Def.'s SOF ¶¶ 10–11.

The words "IMPORTANT INFORMATION ENCLOSED" appeared on the outside of the identical door hangers. Compl. Exs. A–F. A pocket in each hanger held an identical card. The cards had no logo or graphic. *See ibid.* What appears, at least when viewed in a light favorable to Simpson, to be a small identification number beginning with "SPI" can be found in the lower-right corner. *See ibid.* The cards read, in English and Spanish:

IMPORTANT

*PLEASE CALL*
(Customer Service or Mid)
NAME
800-552-3000
TELEPHONE NUMBER

*PLEASE BE READY TO GIVE YOUR ACCOUNT NUMBER.*

*WE ARE EXPECTING YOUR CALL TODAY*

*Ibid.* Dialing the phone number on the cards connected the caller with Midland's "general line." Def.'s Resp. to Pl.'s SOF ¶ 22. A generic version of the card appears in the inspectors' training manual. Pl.'s Ex. E at 54, ECF No. 159-1. According to Simpson, it is reasonable to infer that Safeguard designed the cards from this fact, but Safeguard disagrees. *See* Def.'s Resp. to Pl.'s SOF ¶ 10.

Safeguard markets its services to mortgage companies, though it disputes that it markets them exclusively to companies with delinquent borrowers. Def.'s Resp. to Pl.'s SOF ¶ 5. In its own words, Safeguard is a "privately held mortgage field services company" that "inspects and maintains defaulted and foreclosed properties for mortgage service companies, lenders, investors, and other financial institutions." *Id.* ¶ 4 (quoting Ans. ¶ 7). Among other things, Safeguard advertises "communicating with delinquent borrowers" as a service it provides. Def.'s Resp. to Pl.'s SOF ¶ 4.

Safeguard calls the service at issue here a "contact attempt inspection" ("CAI"). Pl.'s Resp. to Def.'s SOF ¶ 15. Safeguard provides other field services such as cutting the grass, winterizing pipes and utilities, and installing a lock box if the property becomes vacant. *Id.* at ¶ 19.

To determine whether a property is occupied, Safeguard's inspectors check whether the grass has been cut, whether personal property can be seen, whether the home appears to have utility services, and whether the glass, presumably in windows and doors, is intact. Def.'s Resp. to Pl.'s SOF ¶ 32. Inspectors only leave a door hanger if they determine that the property is occupied. *Id.* ¶ 35. Safeguard tells its inspectors to leave the door hanger even if the inspector talks with someone in the home. *Id.* ¶ 9.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In resolving summary judgment motions, "facts must be viewed in the light

most favorable to," and all reasonable inferences from that evidence must be drawn in favor of, "the nonmoving party[–but] only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644 (7th Cir. 2016) (citing *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016)).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (citation omitted)). After "a properly supported motion for summary judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation and footnotes omitted); *see also Modrowski*, 712 F.3d at 1169 (stating party opposing summary judgment "must go beyond the pleadings (e.g., produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor") (citations and quotations omitted). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

"The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment . . . ." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citing *Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150*, 824 F.3d 645, 647–48 (7th Cir. 2016)). The court must separately apply the procedural requirements of Rule 56 to each cross motion for summary judgment. *See id.*; *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778

5

F.3d 593, 603 (7th Cir. 2015). Each movant and nonmovant "must individually satisfy the requirements of Rule 56." *United Transp. Union v. Ill. Cent. R.R. Co.*, 998 F. Supp. 874, 880 (N.D. Ill. 1998) (citing *Proviso Ass'n of Retarded Citizens v. Vill. of Westchester*, 914 F. Supp. 1555, 1560 (N.D. Ill. 1996) and *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Kelly*, No. 95 C 501, 1996 WL 507258, *3 (N.D. Ill. Sept. 4, 1996)). Regarding the material factual contentions, the court adopts "a dual, 'Janus-like' perspective" on cross motions aimed at the same claim or defense. *Hotel 71*, 778 F.3d at 603 (citing *Shiner v. Turnoy*, 29 F. Supp. 3d 1156, 1160 (N.D. Ill. 2014)). On one motion, the court views the facts and inferences in the light most favorable to the nonmovant; but if summary judgment is not warranted, the court changes tack on the cross motion and gives the unsuccessful movant "all of the favorable factual inferences that it has just given to the movant's opponent." *Id.* (citing *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engrs., Local Union 150*, 335 F.3d 643, 647–48 (7th Cir. 2003)). Which party has the burden of proof at trial determines which party must "go beyond the pleadings and affirmatively . . . establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 324).

## III. ANALYSIS

Congress declared the FDCPA's purpose: "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see also Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1328–29) (7th Cir. 1997) (quoting this language and describing it as the FDCPA's "separate and

6

specific purpose"). Among other practices, the FDCPA requires a debt collector, in connection with the collection of a debt, to "disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). After the initial communication, the debt collector must "disclose that [subsequent] communication[s] [are] from a debt collector." *Id.* Additionally, § 1692g(a) requires a debt collector to send the debtor, either in the initial communication within five days after it, a notice listing the debt's amount, the creditor's identity, and certain statements and warnings regarding the consumer's right to dispute the debt. *See id.* § 1692g(a)(1)–(5).

The door hangers here do not contain the disclosures required by §§ 1692g and 1692e. Def.'s Resp. to Pl.'s SOF ¶¶ 21, 26, ECF No. 162. Safeguard does not include those disclosures as a matter of policy, *id.* ¶ 27, presumably because it takes the position that it does not meet the FDCPA's definition of a "debt collector." The parties cross move for summary judgment on that issue. Safeguard adds an additional ground in its motion. It argues that it did not send the "initial communication," so it did not need to give the notices required by § 1692g(a). Def.'s Mem. Supp. Mot. Summ. J. 13–14, ECF No. 156. The court first addresses the question of whether Safeguard is a debt collector. The court then considers the applicability of the "bona fide fiduciary exception" and turns to the § 1692g issue. Finally, the court considers an issue raised only in Simpson's motion for summary judgment: Safeguard's "bona fide error defense" under § 1692k(c).

## A. Fact Issues Preclude Judgment as a Matter of Law on Whether Safeguard is a Debt Collector

The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The following six paragraphs list what the definition does "not include." *See id.* Safeguard says that it does not fall within the core definition just quoted. It alternatively contends that the "bona fide fiduciary" exception to the definition applies. *See* § 1692a(6)(F)(i).

To be a debt collector under the FDCPA, one must attempt to collect a debt owed to another. *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1724 (2017). Simpson did not owe a debt to Safeguard or Midland, though, so the definitional dispute here focuses on what it means to "collect" a debt for purposes of § 1692a(6). As it did at the Rule 12(b)(6) stage, Safeguard casts its role as ministerial. It compares its contact attempt inspections to the ministerial tasks performed by a mail carrier delivering an envelope. *See* Mem. Supp. Def.'s Mot. Summ. J. 8–10, ECF No. 156.

The FDCPA "is not aimed . . . "at companies that perform ministerial duties for debt collectors, such as stuffing and printing the debt collector's letters." *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) (citing *Laubach v. Arrow Serv. Bureau, Inc.*, 987 F. Supp. 625, 629–31 (N.D. Ill. 1997)) (other citations omitted); *see also Randle v. GC Servs. L.P.*, 48 F. Supp. 2d 835, 839–42 (N.D. Ill. 1999). Courts have held that, in appropriate circumstances, engaging in activities going "beyond mere information gathering or message delivery," can make a defendant a debt collector, as where Western Union gave consumers' telephone numbers to creditors. *Romine v. Diversified Collection Servs., Inc.*, 155 F.3d 1142, 1149 (9th Cir. 1998),

cited in *Simpson I*, 2013 WL 2642143, at *2. This court cited another case holding that the defendant qualified as a debt collector based on a complaint's allegations. The complaint included allegations that the defendant sent representatives to deliver notices to creditors and that "representatives are instructed to urge alleged debtors, in person, to call the creditor while they watched. They were to gather contact information from the debtors directly, to speak with their neighbors, and to conduct a visual assessment of their properties." *Siwulec v. J.M. Adjustment Servs., LLC*, 465 F. App'x 200, 204 (3d Cir. 2012). Here, the disputed evidence and the reasonable inferences that could be drawn from it, depending on whether one takes Simpson or Safeguard's perspective, requires the denial of summary judgment.

First, there is a genuine dispute over the material issue of whether Safeguard was actively or passively involved in the design of the door hangers. Courts have found the degree to which the defendant participated in the design of a communication like a letter, as contrasted with being a passive conduit, to be an important factor when deciding whether a particular defendant is a debt collector. *See Siwulec*, 465 F. App'x at 204; *Randle*, 48 F. Supp. 2d at 838–39 (citing *Laubach*, 987 F. Supp. at 630–31). Safeguard points to the "SPI" identifiers in the cards' lower right-hand corner, *e.g.*, Compl. Ex. A at 1, and the fact that a generic card appears on page fifty-four of the manual used to train inspectors, *compare id.*, *with* Pl.'s Ex. E at 54. Safeguard counters that this evidence is insufficient to support the reasonable inference that it designed the cards. As it is reasonable to infer that Safeguard would not include a customer's intellectual property in its training manual, this dispute is genuine.

The second material dispute concerns the "principal purpose" of Safeguard's CAI business. § 1692a(6). Safeguard urges the court to look at the "principal purpose" of its business as the entirety of its property preservation services. *See generally Schweihs v. Chase*

*Home Fin., LLC*, 77 N.E.3d 50, 54 (Ill. 2016) (generally describing services provided by Safeguard in tort case). Safeguard cannot avoid debt collector status merely because it conducts some business that is not debt collection. *See Romine*, 155 F.3d at 1148 (holding Western Union service fell within definition of "debt collector" in part because requiring a phone number "appear[ed] to be unique to the [particular] service"); *Hernandez v. Midland Credit Mgmt., Inc.*, No. 04 C 7844, 2006 WL 695451, at *6 (N.D. Ill. Mar. 14, 2006) (recognizing that the defendant was "a debt collector for the purpose of applying the FDCPA to its actions").

Safeguard's failure to discriminate among the services it provides makes the small mountain of Rule 12(b)(6) cases it cites inapposite here because they involved Safeguard's winterization services without any effort at solicitation rather than the CAI service. *See, e.g.*, *Alqaq v. CitiMortgage, Inc.*, No. 13 C 5130, 2014 WL 1689685, at *3–4 (N.D. Ill. Apr. 29, 2014) (breaking into home to winterize it not debt collection); *Gordon v. Bank of N.Y. Mellon Corp.*, 964 F. Supp. 2d 937, 948–49 (N.D. Ind. 2013) (holding complaint failed to state claim that Safeguard was a debt collector because it alleged Safeguard employees broke into a home but did not say that any defendant mentioned a debt).

Nonetheless, Safeguard has marshalled nontrivial evidence that it is not a debt collector. Safeguard's clients, including Midland, never tell it a loan's status or how much the client thinks is owed. Pl.'s Resp. to Def.'s SOF ¶ 14, ECF No. 164. And except arguably indirectly via the door hangers, Safeguard does not give debtors information about how to make payments. *See id.* ¶¶ 14, 18.

The undisputed purpose of a contact attempt inspection "is to determine the occupancy states [sic] of the property." Def.'s Resp. to Pl.'s SOF ¶ 18, ECF No. 162. Safeguard also points to a letter sent to mortgagees by the federal Department of Housing and Urban Development

("HUD") requiring mortgage servicers to inspect properties once a mortgage loan has been delinquent for more than forty-five days and to reinspect the property every thirty days to make sure it is still occupied. Def.'s Mem. Supp. Mot. Summ. J. 9–10, ECF No. 156; *see also* HUD Mortgagee Letter 2010-18 ("Guidelines"), ECF No. 163-1 App. B. Though the guidelines mention the need to exhaust efforts at reaching the resident by phone or correspondence, Guidelines 7, Safeguard points to nothing in the HUD guidelines requiring it to take the step of leaving a door hanger to determine whether the property is occupied, *see id.* So although HUD's guidelines might give a mortgagee's representative a reason to inspect the property, they do not require leaving the particular form of correspondence selected: door hangers.[1]

Safeguard cites Midland's Federal Rule of Civil Procedure 30(b)(6) representative's deposition to suggest two other reasons for the hangers. Midland's representative testified that one purpose of the door hangers was letting the occupant know who had been there. Def.'s Resp. to Pl.'s SOF ¶ 29. He also stated that door hangers were an alternative method of verifying occupancy. *See* Pruden Dep. 53:1–18.

Other evidence in the record creates a genuine dispute. The door hangers themselves can be reasonably viewed as contradicting this evidence of the CAI service's purpose. The hangers do not mention Midland, Safeguard, or the name of the person who left the hanger; nor do they have a blank for that information. *See* Compl. Exs. A–E. They invite the recipient to call a phone number and have an unspecified account number ready. *See id.* A jury could find that the

---

[1] Safeguard also directs the court's attention to a Chicago ordinance that became effective November 18, 2011, requiring "mortgagees" to file a registration statement for each "vacant" building with Chicago's Department of Buildings thirty days after a property becomes vacant or sixty days after a default on a mortgage, whichever is later. *Fed. Hous. Fin. Agency v. City of Chicago*, 962 F. Supp. 2d 1044, 1050 (N.D. Ill. 2013) (citing Municipal Code of Chicago § 13–12–126(a)(1)). The ordinance makes the mortgagee "responsible for securing the building's doors and windows, maintaining all grass and weeds, [and] clearing snow from the walkway and any public sidewalk adjoining the lot" as well as posting a prescribed sign. *Id.* (citing same source § 13-12-126(a)). Simpson lives in Bolingbrook, not Chicago. Pl.'s Resp. to Def.'s SOF ¶ 5. More importantly for the class, as with the HUD guidelines, Safeguard identifies nothing in the ordinance requiring contact with the occupant or door hangers.

cryptic reference to an account number only makes sense to request if Midland is trying reach the debtor because another occupant (and determining occupancy is one of the stated reasons for the door hanger) would not have the account number. *See id.* And Safeguard markets its services to mortgage servicers holding delinquent debts, Def.'s Resp. to Pl.'s SOF ¶ 5, and its marketed services include contacting customers, *id.* ¶ 6.

What is more, Midland only requests a contact attempt inspection when it has not heard from the debtor in thirty days. Def.'s Resp. to Pl.'s SOF ¶ 31. Safeguard offers other services to its clients that do not involve customer contact. Def.'s Resp. to Pl.'s SOF ¶ 34, ECF No. 162. Moreover, the only evidence in the record shows that Simpson received notices between October 2012 and January 2013, but Midland sent her a notice of default ten months earlier in January 2012. *See* Def.'s Resp. to Pl.'s SOF ¶¶ 15, 17. A jury could reasonably see that as evidence of selective enforcement supporting the conclusion that Safeguard "is dispatched to the homes of particularly delinquent debtors as part of [Midland]'s debt collection efforts." *Fielding v. FCC Fin., LLC*, No. 3:12-cv-00194, 2015 WL 12532741, at *4 (M.D. Tenn. Jan. 22, 2015) (denying summary judgment in part based on evidence showing a service was sent to homes for this reason). Furthermore, a Safeguard inspector must leave the door hanger when he or she talks with someone at the property. Def.'s Resp. to Pl.'s SOF ¶ 9. As inspectors only leave door hangers at homes believed to be occupied, *id.* ¶ 35, a reasonable jury could conclude that the door hanger is superfluous in that situation because the inspector has had an opportunity to identify why he or she was there.

These facts, seen favorably to Simpson, take this record out of the run of cases Safeguard cites analogizing its role to that of a letter carrier or bicycle messenger. A delivery service will generally take anyone's package to an address, whether it is a birthday card, an invitation, or

collection letter. In contrast, a reasonable jury here could find that Safeguard has marketed its CAI services and runs those services principally for the benefit of mortgage servicers trying to collect delinquent debts. *See, e.g.*, *Randle*, 48 F. Supp. 2d at 839–40; *Aquino v. Credit Control Servs.*, 4 F. Supp. 2d 927, 929 (N.D. Cal. 1998) (holding bicycle messenger was not debt collector). The court notes here that Safeguard can be reasonably viewed as providing meaningful follow up. *Cf. Randle*, 48 F. Supp. 2d at 839–40 (finding significant that company had created letters but did provide not follow-up). The fact that Simpson received five door hangers itself supports the inference, favorable to Simpson, that they were intended as follow up. *See* Def.'s Resp. to Pl.'s SOF ¶ 17.

In *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995), the Supreme Court cited a legal dictionary to define the word "collect," used in § 1692a(6), as meaning, "[i]n ordinary English[,] . . . 'to obtain payment or liquidation of [a debt] , either *by personal solicitation* or legal proceedings.'" (emphasis added) (quoting Black's Law Dictionary 263 (6th ed. 1990)). The text of § 1692a(6) includes someone who "regularly collects or attempts to collect, direct or indirectly, debts owed." Combining these two sources yields the rule that one who indirectly attempts to obtain payment or liquidation through personal solicitation is a debt collector.

Weighed as a whole, the summary judgment evidence could support a jury decision for either side on whether Safeguard is a "debt collector" when it performs its contact attempt inspections. If inclined to see things Simpson's way, the contact attempt inspections, a jury could decide, have a principal purpose of encouraging a debtor, with all the subtext of a visible reminder of an in-person visit and a handwritten note (five in Simpson's case), to call Midland, so it can attempt to obtain payment for debt. *See* Def.'s Resp. to Pl.'s SOF ¶ 17 ("We are expecting your call today.") The contrary conclusion, consistent with Midland's Rule 30(b)(6)

depositions and the undisputed fact that Safeguard receives limited information from Midland, would also be reasonable with the benefit of inferences favorable to Safeguard.

In supplemental briefing, Safeguard says this court should grant its motion for summary judgment by following the reasoning of a similar case against it, *Schlaf v. Safeguard Properties, LLC,* No. 3:15-cv-50113 (N.D. Ill. Aug. 29, 2017), available in this record at ECF No. 174.[2] That case also involved door hangers left by Safeguard after CAIs on behalf of a different mortgage servicer. Interestingly, those hangers bear the servicer's name, unlike the hangers in this case. *See* Slip. Op. at 2. Like this court, the *Schlaf* court determined that the HUD guidelines do not "strictly require[ ]" the use of door hangers. *Id.* at 2 n.3. But unlike in this case, the record there included insufficient evidence for a fact finder to conclude that Safeguard directly or indirectly marketed debt-collection services. *Id.* at 4. In addition, the *Schlaf* court twice stressed that "the door hangers bear Green Tree's (not Safeguard's) name" in addition to reiterating its point about Safeguard's marketing. *Id.* at 7; *accord id.* at 8. As already explained, the evidence here supports a finding that Safeguard designed the door hanger and marketed its services as an indirect debt collector. To be clear, in its opinion in *Simpson I*, 2013 WL 2642143, at *2–3, this court mentioned facilitating communications as a shorthand for "indirectly" collecting a debt as that adverb is used in § 1692a(6).

**B. Safeguard Waived or Forfeited the "Bona Fide Fiduciary" Exception**

The definition of a debt collector excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity is

---

[2] In its supplement, Safeguard also brought the court's attention to *Hunte v. Safeguard Properties Management LLC,* No. 16-cv-11198 (N.D. Ill. June 6, 2017), available in this record at ECF No. 171. Decided at the pleadings stage, *Hunte* applied a part of the definition of "debt collector" not at issue here. *See* Slip Op. at 5 (applying prong of definition applying to an entity "the principal purpose of which is the enforcement of security interests." (quoting § 1692a(6)) (emphasis omitted)).

14

incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement."
§ 1692a(6)(F)(i) (numbering omitted). Relying primarily on *Harris v. Liberty Community Management, Inc.*, 702 F.3d 1298, 1302 (11th Cir. 2012), Safeguard argues in the alternative that it fits this exception.

As Simpson points out, Safeguard's motion for summary judgment never cites its Local Rule 56.1 statement of material facts, or any other evidence, in support of this contention. *See* Mem. Supp. Def.'s Mot. Summ. J. 12–13, ECF No. 156. Safeguard does generally reference the testimony of two of its witnesses and certain documents, leaving the court, and the opposing party, to guess at which portions, if any, of those exhibits support its position. *See id.* at 13. Its response to Simpson's motion for summary judgment appears to be identical in this respect and is therefore similarly deficient. *See* Resp. Opp'n Pl.'s Mot. Summ. J. 6–7, ECF No. 161. This defeats the purpose of the Local Rule 56.1 statements. *See Mervyn v. Nelson Westerberg, Inc.*, 76 F. Supp. 3d 715, 720 (N.D. Ill. 2014) (explaining that "the value of the parties' Local Rule 56.1 statements and responses is largely lost if those materials are not cited in the briefs"); *Malec v. Sanford*, 191 F.R.D. 581, 586 (N.D. Ill 2000) (stating that memoranda in support of a motion for summary judgment should cite only the Local Rule 56.1 statements in support of factual propositions).

The legal component of Safeguard's argument is also underdeveloped. The crux of Safeguard's argument seems to be that it was performing a fiduciary duty for Midland under HUD guidelines. Mem. Supp. Def.'s Mot. Summ. J. 13. Nowhere in its briefing does Safeguard cite legal authority showing that a fiduciary relationship between it and Midland existed. The question in *Harris* was whether a management company that collected overdue assessments for a homeowners' association fell into the "bona fide fiduciary" exception. Answering yes, the

*Harris* court pointed to Georgia law that "a 'confidential relationship' exists 'where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.'" *Harris*, 702 F.3d at 1302 (citing GA. CODE ANN. § 23–2–58) (other citations and emphasis omitted). Safeguard does not explain what legal rule creates the fiduciary relationship between it and Midland. Nor does Safeguard discuss the nature of the HUD program in a way that would aid the analysis of what can be a complicated issue. *See generally Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1032–34 (9th Cir. 2009) (analyzing role of student loan company to determine whether exception applied). It cites the letter but offers no legal theory on why a letter to mortgagees makes it a fiduciary. As this argument is undeveloped, the court deems it waived. *See United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived." (quoting Hahaffey v. Ramos, 588 F.3d 1142, 1146 (7th Cir. 2009))).

Not only has Safeguard failed to develop this argument legally and factually, but Simpson also cross moves for summary judgment on this defense. Because Safeguard pleaded the § 1692a(6)(F)(i) defense as an affirmative defense and it has come forward with no evidence creating a triable issue, the defense must be dismissed at summary judgment. *See, e.g.*, *Rowan v. Blatt, Hasenmiller, Leibsker & Moore LLC*, No. 14 CV 08923, 2015 WL 5920873, at *6–7 (N.D. Ill. Oct. 8, 2015) (entering summary judgment on defendant's FDCPA affirmative defenses where nonmovant failed to carry his summary judgment burden).

**C. Successive Debt Collectors Must Make § 1692g Disclosures to Debtors**

Safeguard also seeks summary judgment on Simpson's claim under § 1692g(a) because, it claims, Midland sent Simpson an initial notice including the statements the FDCPA requires in August 2011 and a second notice from a different debt collector is not required. Def.'s Mem. Supp. Mot. Summ. J. 13–15, ECF No. 156. As with its previous argument, Safeguard cites nothing to establish its factual assertion that Midland sent a § 1692g-compliant letter in August 2011. *See id.* at 15. Perhaps this is common ground to the parties, but the court cannot find a reference to it in Safeguard's Local Rule 56.1 statement either. *See* ECF No. 157.

Nevertheless, the court puts this issue to rest because the parties' briefs collect a handsome array of cases on the subject. Courts are divided over whether § 1692g requires a fresh notice from each successive debtor. *See Janetos v. Fulton Friedman & Gullace, LLP*, No. 12 C 1473, 2013 WL 791325, at *4 (N.D. Ill. Mar. 4, 2013) (collecting cases and discussing split). Having reviewed the statute, legislative history, and case law, especially the thorough treatment of this issue in *Hernandez v. Williams, Zinman & Parham PC*, 829 F. 3d 1068, 1071–81 (9th Cir. 2016), this court joins the courts that have decided that the language of § 1692g is ambiguous and read it broadly in light of the FDCPA's remedial purposes to hold that § 1692g applies to initial communications sent by each successive debt collector. *See id.*; *Janetos*, 2013 WL 791325, at*5 (collecting additional authority). Having so concluded, the court denies Safeguard's request for summary judgment on Simpson's § 1692g claims.

**D. Safeguard has Failed to Create a Fact Issue on its Bona Fide Error Defense**

Finally, Simpson moves for summary judgment on Safeguard's "bona fide error" defense under § 1692k(c). *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 575 (2010). Safeguard responds, without citation, that it pleaded this defense in the alternative

and characterizes Simpson's request as an improper attempt to strike an affirmative defense. Resp. Opp'n Pl.'s Mot. Summ. J., 6, ECF No. 161. A plaintiff may use a motion for summary judgment to point out the nonmoving party's inability to come forward with evidence sufficient to support a verdict for it on an affirmative defense on which it will have the burden of proof at trial. *See Alexander v. Unlimited Progress Corp.*, No. 02 C 2063, 2004 WL 2384645, at *4 (N.D. Ill. Oct. 20, 2004) (rejecting defendant's sole argument that "summary judgment can be granted on an affirmative defense only if the defendant moves for it," entering summary judgment on defendant's bona fide error defense, and explaining that "a summary judgment motion 'is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'" (quoting *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1111 (7th Cir. 2004))). As Safeguard has not pointed to evidence creating a fact issue on its bona fide error defense, it must be dismissed at summary judgment. *See id.* at *6; *Rowan*, 2015 WL 5920873, at *7.

## IV. CONCLUSION

For the reasons stated, Simpson's motion for summary judgment (ECF No. 146) is granted in part and denied in part, and Safeguard's motion for summary judgment (ECF No. 151) is denied. The court dismisses Safeguard's bona fide error defense under § 1692k(c) and its defense invoking the bona fide fiduciary exception of § 1692a(6)(F)(i). A status conference is set for October 13, 2017, at 9:30 a.m.


Date:  September 28, 2017              /s/
                                       Joan B. Gottschall
                                       United States District Judge

18